**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KAITLIN NADINE PARKER,

      Plaintiff,

v.                                    No. 1:25-cv-0878 DLM

FRANK BISIGNANO,
Commissioner of Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Kaitlin Parker's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum. (Doc. 11.) Having considered the record, submissions of counsel, and relevant law, the Court will **GRANT** the motion.

## I.    Procedural History

On May 2, 2022, Parker filed an application with the Social Security Administration for a period of disability insurance benefits (DIB) under Title II of the Social Security Act (SSA). (Administrative Record (AR) at 178.[1]) Parker alleged a disability onset date of August 28, 2020, and her date last insured (DLI) was December 31, 2022. (*See id.* at 59, 178.) Disability Determination Services (DDS) determined that Parker was not disabled initially and on reconsideration. (*See id.* at 59–79.) Parker requested a hearing before an Administrative Law Judge (ALJ) to challenge the decision. (*Id.* at 104–06.)

Both Parker and a vocational expert (VE) testified during the de novo hearing. (*See id.* at 34–58.) ALJ David Benedict issued an unfavorable decision on September 20, 2024. (*Id.* at 17–

---

[1] Document 10 contains the sealed Administrative Record. (Doc. 10.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

29.) Parker submitted a request for review of the ALJ's decision, which the Appeals Council ultimately denied on July 18, 2025. (*Id.* at 1–6, 175–77.) Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i)–(iv); *see also* 20 C.F.R. § 404.1509; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect her capacity to work and of what she can still do despite her limitations. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Benedict found that Parker "did not engage in substantial gainful activity during the period from her alleged onset date of August 28, 2020[,] through her [DLI] of December 31, 2022." (AR at 19 (citing 20 C.F.R. §§ 404.1571–76).)

At Step Two, the ALJ concluded that "[t]hrough the [DLI], [Parker] had the following severe impairments: right wrist [tendinitis]; chronic asthma; Sjogren's syndrome; Hashimoto's thyroiditis; and generalized anxiety disorder." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) He also considered several other medical issues and found they were non-severe. (*Id.* at 20.)

At Step Three, the ALJ found that Parker "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

At Step Four, the ALJ considered the evidence of record and found that, through her DLI, Parker:

> had the [RFC] to perform less than the full range of light work as defined in 20 [C.F.R. §] 404.1567(b), with standing and/or walking for a total of six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. [She] could frequently climb ramps, stairs, ladders, ropes, and scaffolds. Additionally, [she] could occasionally crawl. She could frequently handle and finger with the dominant right upper extremity. Moreover, [she] needed to avoid concentrated exposure (no more than a frequent level) to extreme cold, vibrations, and atmospheric conditions, such as fumes, odors, dust, mist, gases, and poor ventilation. Finally, she could understand, remember, and carry[ ]out only simple instructions.

(*Id.* at 23.) Based on his review of the record and the testimony of the VE, ALJ Benedict found that through her DLI, "there were jobs that existed in significant numbers in the national economy that [Parker] could have performed." (*Id.* at 28 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) The ALJ concluded that Parker "was not under a disability . . . at any time from August 28, 2020, the

3

alleged onset date, through December 31, 2022, the [DLI]." (*See id.* at 29 (citing 20 C.F.R. § 404.1520(g)).)

### III.    Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

IV.    Discussion

Parker argues that remand is warranted because the ALJ (1) improperly assessed the opinion of her treating physician, Elizabeth Koffler, M.D.; and (2) the RFC was not based on substantial evidence because the ALJ "excluded his own moderate limitation in adaptation and improperly discounted Ms. Parker's subjective allegations of pain and other symptoms . . . ." (*See* Doc. 11 at 1.)

A.    The ALJ's analysis of Dr. Koffler's opinion warrants reversal.

Parker first argues that the ALJ's treatment of Dr. Koffler's opinion was inadequate. (Doc. 11 at 6–12.) Under the revised regulations, the ALJ must "consider[] the persuasiveness of [all medical] opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). Supportability and consistency "are the most important factors[,]" and the ALJ must explain how he considered those two factors in evaluating medical opinions. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, address the remaining factors. *See id.* The ALJ need only "provide enough detail such that the Court 'can follow the adjudicator's reasoning' and determine whether the 'correct legal standards have been applied.'" *Emerald v. Kijakazi*, No. 2:22-cv-0470 GBW, 2023 WL 6389075, at *3 (D.N.M. Sept. 30, 2023) (quoting *Keyes-Zachary*, 695 F.3d at 1166) (subsequent citation omitted).

Parker argues first that the ALJ's analysis of Koffler's opinion was deficient because he did not mention a specific moderate limitation. (*See* Doc. 11 at 6–7.) She also argues that the ALJ's analysis of the consistency factor was insufficient or erroneous. (*See id.* at 13–17.) The Court finds merit in Parker's second allegation of error.

5

Dr. Koffler, Parker's primary care physician, began treating Parker on January 5, 2021. (*See* AR at 395.) The treating relationship lasted well beyond December 31, 2022, Parker's DLI. (*See, e.g.*, *id.* at 932–33.) In total, Parker saw Koffler six times over 19 months for complaints related to her right wrist. (*See id.* at 372 (Mar. 22, 2021), 356 (May 26, 2021), 319 (Sept. 16, 2021), 746 (Nov. 12, 2021), 763 (Apr. 28, 2022), 797 (Oct. 21, 2022).)

Koffler first recorded Parker's complaints about her wrist on March 22, 2021, noting that Parker had experienced numbness and tingling in her right wrist "for greater than 4 to 6 weeks." (*See id.* at 372.) Koffler observed that Parker's Tinel's and Phalen's signs were positive.[2] (*Id.* at 374.) Koffler gave Parker "referrals to neurology for an EMG[3] and hand surgery per [Parker's] request for evaluation." (*See id.*) At a May 26, 2021 appointment, Parker complained of "[p]retty constant pain in the right wrist" that was "worse with picking up things like cups of coffee." (*Id.* at 356.) Parker informed Koffler that she had "an EMG and saw neurology[,] and testing was normal." (*See id.*) She "tried several weeks of physical therapy" but "continues to struggle with pain." (*See id.*) Koffler assessed tendinitis and ordered an x-ray, which she later determined was normal. (*See id.* at 355, 358.) On September 16, 2021, Parker saw Koffler via a telehealth appointment, presenting with wrist pain and updating Koffler that she had been diagnosed with Sjogren's syndrome and Hashimoto's thyroiditis. (*See id.* at 319–20.)

---

[2] "The Tinel sign is the result of a simple, noninvasive test that checks for nerve problems." *What is a Tinel Sign?*, WebMD (Sept. 24, 2025), https://www.webmd.com/pain-management/carpal-tunnel/what-is-tinel-sign. A positive Tinel's sign may indicate nerve problems. *See id.* The Phalen's test helps medical providers diagnose carpal tunnel syndrome. *See Phalen's Test*, Cleveland Clinic (July 18, 2023), https://my.clevelandclinic.org/health/diagnostics/25133-phalens-test.

[3] EMG, or electromyography, is a test that may help physicians "diagnose injuries and conditions that affect . . . muscles and the nerves that control them, such as carpal tunnel syndrome and muscular dystrophy." *EMG (Electromyography)*, Cleveland Clinic (Feb. 10, 2023), https://my.clevelandclinic.org/health/diagnostics/4825-emg-electromyography.

On November 12, 2021, Parker reported that she underwent an MRI "and was evaluated by hand surgery[,]" but the results were "[o]nly notable for tendinitis." (*See id.* at 746; *see also id.* at 48 (Parker's hearing testimony noting that the hand surgeon told her there was no viable surgical option for her wrist).) Koffler recorded that Parker "[f]ailed trials of [physical therapy]" and was "considering applying for disability due to her pain." (*Id.* at 746.) The two discussed topical options to help her symptoms, and Koffler noted that Parker would try topical CBD. (*See id.*) Koffler's observations from an April 28, 2022 appointment were similar, with an added note that Koffler would sign a medical cannabis card. (*Id.* at 763.) On October 21, 2022, Koffler re-signed the medical cannabis card. (*See id.* at 797.)

At Parker's request, Koffler wrote two letters to Parker's attorney prior to her DLI, one on May 25, 2022, and the second on November 7, 2022. (*See id.* at 795–96.) The letters were nearly identical and read:

> This letter is to confirm that Kaitlin Parker has chronic right wrist pain. She has had significant work up including imaging studies (Xray, MRI), hand surgeon evaluation, neurology evaluation, [and] nerve conduction studies. All work up has been within normal limits, but Ms. Parker continues to have significant pain. This likely will be a chronic condition that may not improve.

(*See id.* at 795; *see also id.* at 796.)

On June 4, 2024, Koffler completed a Medical Assessment of Ability to Do Work-Related Activities (Manipulatives). (*See id.* at 932–33.) She opined that Parker "suffers from a pain or fatigue producing impairment"; her pain is severe and causes sleep disturbances and fatigue; and she must rest more than allotted break periods due to pain and/or fatigue. (*See id.* at 932.) Koffler rated Parker's ability to complete a normal workday or week without interruptions from pain or fatigue-based symptoms as moderately limited. (*See id.*) Based on her own observations and records, Koffler opined that Parker was able to occasionally and frequently lift and/or carry up to

7

10 pounds; was unable to lift or carry bilaterally; was able to occasionally reach, handle, finger, push, and pull with her right hand/arm; and had no limitations with her left hand/arm. (*See id.* at 933.) Finally, Koffler opined that Parker has "chronic right wrist pain [resulting] in difficulty with daily function of [her] right wrist [and] hand." (*See id.*)

The ALJ found Koffler's opinion within the Medical Assessment of Ability to Do Work-Related Activities (Manipulatives) "not persuasive." (*See id.* at 27 (citing AR at 932–33).) The ALJ recounted Koffler's opinion that Parker "is limited to performing less than the full range of sedentary exertional work[,]" cannot do "any bilateral lifting or carrying[,]" and "can only occasionally use her right hand/arm." (*See id.* (citing AR at 932–33).) The ALJ found that Koffler's opinion was supported by her own examinations, but it was not consistent with the record. (*See id.* (citing AR at 707, 727, 752, 797–98, 860, 895, 897, 899).)

### 1.    The ALJ did not err by failing to mention Koffler's opinion on Parker's ability to complete a normal workday.

Parker first observes that the ALJ did not mention the piece of Koffler's opinion regarding Parker's ability to complete a normal workday. (*See* Doc. 11 at 6–7.) Parker argues that this was reversible error, because a moderate limitation on her ability to work without interruptions from pain or fatigue would impact her RFC. (*See id.* at 12.) The Commissioner responds that "the controlling regulation does not require such a parsed analysis of opinion evidence." (*See* Doc. 16 at 6.) "Instead, in setting forth the minimal articulation requirements, only source-level articulation is required." (*Id.* (citing 20 C.F.R. § 404.1520c; *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022); *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012)).) Parker replies that the cited authority relates only to cases in which a provider submits

*multiple* opinions, and not here, where Koffler submitted only a single opinion. (*See* Doc. 19 at 4.) Parker cites no binding authority in support of this point. (*See id.*)

Decisions from courts within the Tenth Circuit have applied § 404.1520c(b)(1) in line with the Commissioner's position. *See, e.g.*, *Mikela Rene R. v. Dudek*, No. 24-cv-0156 JWL, 2025 WL 1167981, at *2–3, 5–6 (D. Kan. Apr. 22, 2025) (finding that where "the ALJ properly found [a provider's single] opinion only partially persuasive, there is no reason for her to provide a further explanation why she did not accept" one specific limitation within the opinion); *J.A.H. v. O'Malley*, No. 1:22-cv-3350 SBP, 2024 WL 4346394, at *12 (D. Colo. Sept. 30, 2024) (finding that "the ALJ was not required to address each opinion (or sub-opinion)" in the persuasiveness analysis); *Houston A.G. v. O'Malley*, No. 23-cv-0211 MTS, 2024 WL 3027414, at *5 (N.D. Okla. June 17, 2024) (finding that the ALJ did not err in failing to discuss all of a provider's opined limitations). Similarly, here, the Court declines to find that the ALJ erred by failing to specifically discuss Koffler's opined limitation regarding Parker's ability to complete a normal workday. Because the Court is remanding for other reasons, however, the ALJ may wish to address this limitation specifically.

### 2. The ALJ's consistency analysis was inadequate.

Parker next contends that the ALJ's consistency analysis was insufficient. (*See* Doc. 11 at 7–12.) In analyzing consistency, the ALJ "compares [the] medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. § 404.1520c(c)(2).

9

Parker argues the consistency analysis was deficient both because the ALJ cited only three records from within the relevant time period in support, and because he failed to discuss other record evidence that supports Koffler's opined limitations. (*See* Doc. 11 at 7–11.) The Commissioner responds in relevant part that, throughout the opinion, the ALJ highlighted records to demonstrate that Parker had "intact sensation and circulation, normal neurological findings, normal musculoskeletal range of motion, normal range of motion in her right wrist, as well as a normal EMG." (*See* Doc. 16 at 5 (citations omitted); *see also* AR at 27 (citing AR at 707, 727, 752, 797–98, 860, 895, 897, 899).) Curiously, the ALJ also noted that Parker exhibited "wheezing, shortness of breath, . . . intact circulation, normal ambulation, alertness, no lesions or discoloration of the skin, normal pulmonary effort[,] . . . normal conjunctivae, [and] a soft abdomen" and asserted that these treatment notes also provide evidence that Koffler's opinion was inconsistent with the record. (*See* AR at 27 (citations omitted).) The Court finds the cited records are simply a list of observations; the ALJ "draws no conclusions and [offers] no analysis of how these mixed findings impact [Parker's] RFC." *See Malcolm S. v. Bisignano*, No. 1:25-cv-0038 JMR, 2026 WL 811575, at *9 (D.N.M. Mar. 24, 2026). In other words, the ALJ did not explain how these findings contradict Koffler's opined lifting restrictions, and the Court is unable to follow the ALJ's reasoning with respect to the consistency analysis.

Moreover, as noted by Parker, the ALJ wholly failed to discuss records that supported Koffler's opinion, either in his analysis of her opinion or elsewhere. For example, while the ALJ briefly noted that Parker was "referred for occupational therapy" (*see* AR at 25 (citing AR at 725)), he never mentioned the occupational therapy records themselves, which confirmed Parker's difficulties caring for her daughter, cutting food, dressing, washing her hair, writing, typing, gripping, and making a fist. (*See id.* at 376, 433.) Occupational therapy notes reflect complaints of

10

swelling and decreased range of motion in her right hand/wrist, significant pain (as high as 7/10), numbness, and "functional but limited" strength in her right wrist. (*See, e.g.*, *id.* at 399, 415, 417, 434–35.) On discharge from occupational therapy, Parker had not met her goal of being able to lift a 5–10 pound object without pain. (*See id.* at 350.) Nor did the ALJ review or mention treatment records from Clifford Stermer, M.D., who saw Parker for possible nerve damage and diagnosed carpal tunnel and inflammatory polyarthropathy. (*See id.* at 272–73.)

This is not an instance, as the Commissioner maintains, "where the ALJ's 'thorough discussion of the medical evidence' elsewhere in the decision 'adequately outlined'" the evidence he asserted was inconsistent with Koffler's opinion. (*See* Doc. 16 at 5–6 (quoting *Aragon v. Kijakazi*, No. 1:21-cv-0977 KK, 2023 WL 1994085, at *6 (D.N.M. Feb. 14, 2023)); *see also* Doc. 19 at 2–3.) Rather, the Court finds the ALJ's explanation regarding the consistency factor is "legally insufficient and unsupported by substantial evidence." *See Malcolm S.*, 2026 WL 811575, at *7. The Court will grant Parker's motion on this basis and remand for further consideration of Dr. Koffler's opinion in light of the record evidence.

Finally, while the Court need not reach the issue explicitly, the Court is dubious about whether the ALJ adequately considered Parker's allegations of pain and other symptoms. In addition to the records outlined above, the ALJ also failed to mention other pertinent records, including the various treatments Parker has tried to alleviate her pain (*see, e.g.*, AR at 43 (topical pain remedies), 277 (wrist splint), 305 (prednisone), 429 (wrist/thumb spica splint), 860 (medical cannabis)). The ALJ should revisit this analysis on remand.

Because remand is required on the basis outlined above, I do not address Parker's remaining arguments. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining

that the reviewing court need not reach issues raised that "may be affected by the ALJ's treatment of th[e] case on remand").

**IT IS HEREBY ORDERED** that Parker's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 11) is **GRANTED**.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*PRESIDING BY CONSENT*

12